**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Warren Nau Higgins, Jr., Civil No. 00-37 (DWF/AJB)

Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**

Suzanne M. Born, personally; James M. Crow, Assistant Dakota County Attorney, personally; James Backstrom, Dakota County Attorney, personally; Dakota County, Dakota County Board of Commissioners; Dakota County Community Services, IV-D Agency; Richard J. Wright, Midwest Patrol Officer, personally; Midwest Patrol; Brenda Stansbury, personally, Dakota County Community Services; Deloris Daggett, personally; Jackie Dircks, personally, Dakota County Community Services; Terry R. Pahl, personally, Office of Administrative Hearings; Philip E. Dalseth, personally, Dakota County Community Services; George A. Beck, personally; the City of West St. Paul; Sgt. Shaver, personally; Lana Susan Higgins; Mark Carter, personally; Laura Kadwell, personally, State of Minnesota Child Support Enforcement; State of Minnesota Child Support Enforcement Division, IV-D Agency, Laura Kadwell, Director; State of Minnesota, Department of Human Services; Jesse Ventura, Governor of the State of Minnesota, Chief Executive Officer; Michael Hatch, Attorney General of the State of Minnesota; Charles R. Weaver, Commissioner of Public Safety; Brian Lamb, Director, Driver and Vehicle Services; B. Todd Jones, U.S. Attorney of the District of Minnesota; Janet Reno, U.S. Attorney, Executive Office of the U.S. Attorney, U.S. Department of Justice,

Defendants,

and

James Charles Rose and Larry Allen Nelson,

Movants.

---

JUL 25 2000
FILED
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD JUL 26 2000
DEPUTY CLERK

John Remington Graham, Esq., c/o Warren Nau Higgins, Jr., 3840 Ballantrae Rd. #10, Eagan, MN 55122, appeared on behalf of Plaintiff.

Steve Lokensgard, Esq., and Cynthia Jahnka, Esq., Suite 900, Minnesota Attorney General's Office, 445 Minnesota Street, St. Paul, MN 55105, appeared on behalf of Defendants Suzanne Born, Terry Pahl, George Beck, Laura Kadwell, State of Minnesota Child Support Enforcement Division, State of Minnesota Department of Human Services, Governor Jesse Ventura, Minnesota Attorney General Michael Hatch, Commissioner of Public Safety Charles Weaver, and Director of Driver and Vehicle Services Brian Lamb.

Jay Stassen, Esq., Dakota County Attorney's Office, 1560 West Highway 55, Hastings, MN 55033, appeared on behalf of Defendants Assistant Dakota County Attorney James Crow, Dakota County Attorney James Backstrom, Dakota County Board of Commissioners, Dakota County Community Services, Brenda Stansbury, Deloris Daggett, Jackie Dircks, and Philip Dalseth.

Byron Peterson, Esq., Johnson & van Vliet, 975 First Bank Building, 332 Minnesota Street, St. Paul, MN 55101, appeared on behalf of Defendants Richard Wright and Midwest Patrol.

Jon Iverson, Esq., Erstad & Riemer, 1000 Northland Plaza, 3800 West 80th Street, Minneapolis, MN 55431-4409, appeared on behalf of Defendants City of West St. Paul and Sergeant Shaver.

Mark Carter, Esq., 33 Tenth Avenue South, Suite 110, Hopkins, MN 55343, appeared on behalf of Defendant Lana Higgins.

Tim Shields, Esq., Shields Law Office, 33 10th Avenue South, Suite 110, Hopkins, MN 55343, appeared on behalf of Defendant Mark Carter.

Mary Jo Madigan, Esq., U.S. Attorney's Office, 600 U.S. Courthouse, 300 4th Street South, Minneapolis, MN 55415, appeared on behalf of Defendants Attorney General Janet Reno and U.S. Attorney B. Todd Jones.

Movant James Charles Rose, address unknown, and Movant Larry Allen Nelson, Route 1, Box 248 D, Mazappa, MN 55956, appeared pro se.

---

**Introduction**

The above-entitled matter came on for hearing before the undersigned United States District Judge on March 31, 2000, pursuant to Motions by each of the Defendants to Dismiss or, in the alternative, for Summary Judgment of all claims; Motions by James Charles Rose and Larry Allen Nelson to intervene as party plaintiffs; and a Motion by Plaintiff for removal, stay of

a state court action, leave to amend the complaint, for summary judgment and for temporary restraining order. For the reasons set forth below, Defendants' motions are granted, and the motions of the Movants and the Plaintiff are denied.

**Background**

Plaintiff Warren Nau Higgins, Jr. (Higgins) was, at one point, married to Defendant Lana Susan Higgins. That marriage was dissolved by order of the Dakota County District Court on July 5, 1994, and custody of the couple's two minor children was awarded to Lana Higgins. Higgins was ordered to pay $462.90 per month for child support and $50.00 per month for daycare expenses.

At the time of the dissolution, Higgins worked as a self-employed insurance broker. After the dissolution, Higgins' employment record became somewhat spotty and his income dropped considerably. Higgins claims that his wages have been improperly garnished and that the child support obligations have forced him into "involuntary servitude, slavery." He further argues that any attempt to force him to agree to pay his arrearages would violate his right to free exercise of his religion,[1] would violate the establishment clause of the First Amendment, and would interfere with his substantive due process right to contract.

Higgins has tried to have his child support obligations reduced, claiming indigence. His requests to have those obligations reduced, and for relief from increases in those obligations due to cost of living adjustments, have been denied by both the state district court and the Minnesota Court of Appeals. The Minnesota Court of Appeals affirmed a district court finding that

[1] The Complaint is unclear about what Higgins' religion is or how signing some note of indebtedness would violate his religious convictions.

Higgins' loss of income was self-imposed and thus did not justify a reduction or elimination of child support obligations.

By December 31, 1996, Higgins owed support arrears in the amount of $8,263.43. Pursuant to Minn. Stat. § 515.551, subd. 13, Higgins was served with a Notice of Intent to Suspend Driver's License in October of 1996. Higgins requested a hearing on the suspension. That hearing was held before Administrative Law Judge Suzanne Born on January 9, 1997.

During the January 9, 1997, hearing, Higgins argued that Judge Born was not authorized to preside over the hearing and that any action she might order in the matter would violate the separation of powers provisions of the Minnesota Constitution. He raised the constitutional concerns above and further argued that the sanction provisions in the Minnesota Statutes amounted to *ex post facto* laws and unlawful bills of attainder. Higgins was apparently quite disruptive both before and during his hearing. Judge Born had Higgins removed from the hearing room midway through the hearing. Higgins was escorted from the hearing room by Defendant Richard J. Wright, a security guard employed by Defendant Midwest Patrol. Higgins alleges that Wright informed Higgins he could be arrested for criminal contempt if he did not leave the courtroom as Judge Born ordered. Higgins was met in the corridor by Defendant "Sgt. Shaver" (Bud Shaver), a law enforcement officer for the Defendant City of West St. Paul. Sergeant Shaver escorted Higgins from the building. Judge Born completed the hearing without Higgins' presence and ordered suspension of his driver's license.

Judge Born's decision was affirmed by a district court judge and by the Minnesota Court of Appeals; the Minnesota Supreme Court denied review of Higgins' subsequent appeal. However, through a computer error, the State of Minnesota inadvertently re-issued Higgins' license in October of 1997.

In May of 1998, Administrative Law Judge Brad Johnson reduced Higgins' monthly child support obligation, but granted Lana Higgins a judgment against Higgins for arrearages in the amount of $14,738.79. Judge Johnson's order was appealed to Dakota County District Court, where District Court Judge Rex Stacey reinstated the original child support obligation and ordered Higgins to contribute to the costs of medical and dental insurance for his children.

Higgins remains in arrears on his child support obligations. On December 18, 1999, the State of Minnesota served Higgins with a Notice of Intent to Suspend Driver's License and Occupational License. Higgins did not request a review hearing to challenge the suspension action.

Higgins has brought this action alleging that Judge Born, Administrative Law Judge George Beck (who affirmed Judge Born's decision), Assistant Dakota County Attorney James Crow, "other public officials," Lana Higgins, and her attorney Mark Carter engaged in behavior designed to deprive Higgins of his constitutional due process rights.[2] Higgins further implicates the equal protection clause, the double jeopardy clause, and the religion clauses of the First

---

[2] Higgins' references to the right to make and enforce contracts and his vague allegations of conspiracy between the Defendants would seem to implicate 42 U.S.C. §§ 1981 and 1985. However, claims under §§ 1981 (protecting the right to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property) and 1985(3) (dealing with conspiracy to deprive citizens of equal protection under the laws) require evidence of some racial animus or other class-based motivation. *See, e.g., Mian v. Donaldson, Lufkin, & Jenrette Securities Corp.*, 7 F.3d 1085 (2nd Cir. 1993) (requirements for § 1981 claim), *cert. denied*, 516 U.S. 824 (1995); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263 (1993) (women seeking an abortion not a protected class for purposes of § 1985(3) claim); *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO, et al. v. Scott, et al.*, 463 U.S. 825 (1983) (animus based on economic or commercial association insufficient to state a claim under § 1985(3)); *Griffin v. Breckenridge*, 403 U.S. 88 (1971) (evidence of racial animus or class-based motivation necessary to support § 1985(3) claim). Because no such racial or class-based animus is alleged here, the Court will consider Higgins' claims to be brought under 42. U.S.C. § 1983.

Amendment. Higgins seeks to hold all of the Defendants in this litigation responsible for the alleged constitutional violations. He further argues that subsequent decisions by the Minnesota Court of Appeals and the United States District Court for the District of Minnesota, which found the involvement of administrative law judges in these proceedings to be unconstitutional, should be retroactively applied to his case.

All Defendants have moved for dismissal or, in the alternative, for summary judgment. Higgins has requested summary judgment, a stay of the state court suspension proceedings, a temporary restraining order, and leave to amend his Complaint. In addition, two other individuals facing suspension of their driver's licenses due to nonpayment of child support have moved to intervene in this action.

## Discussion

### 1. Standard of Review

This matter is before the Court on several motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Nietzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

In the alternative, the moving party has requested that the Court consider this motion a motion for partial summary judgment. As such, the Court may look beyond the pleadings to facts established in the record of the case. Even so, summary judgment is only proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

With a motion for summary judgment or partial summary judgment, the moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Defendants City of West St. Paul and Sergeant M.G. Shaver**

As these Defendants note, Higgins' Complaint is somewhat vague in its allegations against the City of West St. Paul and Sergeant Shaver, individually. The Complaint contains a broad reference to Sergeant Shaver's failure "to help equally protect Plaintiff and his rights."

The Complaint also references Sergeant Shaver's refusal to allow Higgins to make a statement at the "crime scene" and Sergeant Shaver's refusal to allow Higgins to return to the hearing to defend his position. These references would seem to suggest an allegation of a due process violation.

At the outset, Defendant City of West St. Paul cites *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the proposition that a municipality may only be liable for the unconstitutional actions of its employees if those actions were pursuant to a formal policy or informal custom of the municipality. Higgins has made no allegations that Sergeant Shaver was acting pursuant to some unconstitutional policy or custom of the police force. Accordingly, Higgins' Complaint against the City of West St. Paul should be dismissed.

These Defendants further argue that the actions of Sergeant Shaver are protected by qualified immunity. With respect to the qualified immunity of Sergeant Shaver, the question the Court must answer is whether a reasonable officer could have believed his or her conduct was lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635 (1987). The scope of qualified immunity is broad and is denied only "when it is obvious that no reasonably competent officer would have concluded" that the conduct was legal. *Id.* at 641. In other words, the doctrine of qualified immunity is designed to shield law enforcement officers from liability for actions which fall into constitutional grey areas, actions which a competent officer might mistakenly believe to be legal.

The Supreme Court has noted that one purpose of qualified immunity is to protect public officials from incurring the costs of litigation. *Id.* at 646 n.6. As a result, the question of qualified immunity should be resolved as early in the litigation process as possible, even on a motion to dismiss before discovery. *Id.* On a motion to dismiss, the Court must determine

"whether the actions [Higgins alleges Shaver] to have taken are actions that a reasonable officer could have believed lawful. If they are, then [Shaver] is entitled to dismissal prior to discovery." *Id.* Under that standard, Sergeant Shaver is entitled to dismissal. A reasonable officer could have believed every action Sergeant Shaver took to be lawful.

Indeed, the facts here are even more cut and dried than the standard articulated in *Anderson* requires. Higgins argues that the Court should liberally construe his Complaint because he is pro se and because he makes constitutional allegations. The Court has considered the facts presented by Higgins and attempted to square them up with some cognizable constitutional claim against Sergeant Shaver. The Court is unable to do so. The circumstances in this case go far beyond the "grey area" actions which the doctrine of qualified immunity is designed to protect. In his Complaint, Higgins fails to allege a single action which any officer–or, indeed, this Court–might consider unlawful. Even granting Higgins some latitude as a pro se plaintiff, the Court cannot conceive of the constitutional provision Sergeant Shaver might have violated through the actions described in the Complaint. The Complaint against Sergeant Shaver should also be dismissed.

**3. Mark Carter and Lana Higgins**

The allegations against Higgins' ex-wife, Lana Higgins, and her attorney, Mark Carter, are even less clear than those against Sergeant Shaver. Higgins appears to suggest that Carter and Lana Higgins violated his constitutional rights to due process by participating in the child support enforcement proceedings. A claim brought under 42 U.S.C. § 1983 for deprivation of constitutional rights can only stand against a defendant who is acting under color of state law.

Lana Higgins is a private citizen. There is no allegation in the Complaint that she held herself out as an agent of the state. Moreover, granting Higgins' Complaint even the most liberal

construction, there are no facts alleged which might support a finding that Lana Higgins was acting under color of state law. A claim under 42 U.S.C. § 1983 against Lana Higgins is inappropriate.

Similarly, the Eighth Circuit has squarely held that an attorney representing one party to a divorce action is not acting under color of state law for purposes of an action under 42 U.S.C. § 1983. In *Dotlich v. Kane*, 497 F.2d 390 (8th Cir. 1974), the Eighth Circuit affirmed the District Court's dismissal of a § 1983 claim against a divorce attorney because the attorney, in representing the plaintiff's spouse in a dissolution proceeding, was not acting under color of state law. While it is true that Higgins' Complaint is based not on the dissolution itself, but upon a hearing imposing statutory sanctions for non-support, the analysis is the same. The allegations in the Complaint, even liberally construed, do not include an allegation that Mark Carter was acting under color of state law. Accordingly, the Complaint against him for violation of 42 U.S.C. § 1983 should be dismissed.

In bringing their joint motion for dismissal, Lana Higgins and Mark Carter have requested that the Court impose Rule 11 sanctions on Higgins both for bringing a frivolous claim and for bringing a claim for an improper purpose. The Court agrees that such sanctions would be appropriate in this matter. Higgins' claims, particularly those against Lana Higgins and Mark Carter, are wholly unfounded and cannot be based on more than the most cursory inquiry into the law. The Complaint does not even allege any action by Lana Higgins or Mark Carter other than Lana Higgins, through her attorney, cooperating with state agencies by reporting arrearages of child support owed to her. For Mr. Higgins to force Lana Higgins and her attorney both to incur the costs of defending a federal lawsuit premised upon such uncontroversial behavior offends any reasonable notion of fundamental fairness and is contrary to the interests of justice. The Court

finds that Rule 11 sanctions in an amount consistent with the reasonable attorney's fees and costs incurred by Lana Higgins and Mark Carter should be imposed upon Warren Higgins for this frivolous and harassing litigation against his ex-wife and her counsel.

**4. Midwest Patrol and Richard J. Wright**

Midwest Patrol ("Midwest") is a private security agency which is under contract with Dakota County to provide courtroom security. Richard Wright ("Wright") was the security guard assigned to Judge Born's courtroom on January 9, 1997. Although Midwest is a private security agency, Midwest and Wright do not, in this motion, deny that Wright was acting under color of state law on January 9, 1997.

In his Complaint, Higgins notes only that Wright told Higgins he needed to abide by the Judge's orders and that Wright told Higgins he could be arrested for criminal contempt if he continued to defy Judge Born. Again, the Complaint does not clearly state which actions of Wright violated which of Higgins' constitutional rights. However, it is clear that, assuming every fact as alleged in the Complaint to be true, a reasonable law enforcement officer could have believed every action of Wright to be legal. Accordingly, Wright is entitled to qualified immunity and the claims against him should be dismissed.

The claims against Midwest should also be dismissed because Higgins has failed to allege any legal basis for vicarious liability. Higgins has not alleged that Wright's actions were pursuant to a policy or custom of Midwest which might give rise to vicarious liability under 42 U.S.C. § 1983. Higgins has not alleged that Midwest failed to adequately train or supervise Wright and so has not articulated a basis for some independent tort against Midwest. In short, the most liberal construction of the Complaint fails to yield any basis for liability against Midwest.

**5. Attorney General Janet Reno and U.S. Attorney B. Todd Jones**

The Complaint is utterly silent with respect to these two named Defendants. Other than listing Attorney General Reno and U.S. Attorney Jones in the caption of his suit, Higgins does not once mention either individual, their offices, or the United States of America in reference to any allegedly unconstitutional or otherwise actionable deed. While the Court is required to grant Higgins some latitude as a pro se plaintiff, Higgins' Complaint against these two Defendants does not even meet the most basic threshold; the Court simply cannot determine what cause of action Higgins might have against these Defendants. Accordingly, the motion of these Defendants to dismiss for failure to state a claim on which relief can be granted is granted.

**6. Dakota County Defendants**

In his Complaint, Higgins has named Assistant Dakota County Attorney James Crow, Dakota County Attorney James Backstrom, the Dakota County Board of Commissioners, Dakota County Community Services, Brenda Stansbury, Deloris Daggett, Jackie Dircks, and Philip Dalseth[3]; collectively, these are the "Dakota County Defendants." Once again, it is difficult to determine what specific acts or omissions form the basis of Higgins' complaints against these Defendants. The Complaint states that "[e]veryone who participated failed to act and were indifferent to Plaintiff's rights and strongly opposed giving Plaintiff a new hearing [regarding suspension of his driver's license], so that he may exercise his constitutional due process rights." Higgins goes on to list the "actors and/or conspirators" involved, and the list includes the Dakota County Defendants. Thus, the Court must conclude that Higgins seeks to hold the Dakota

---

[3] Jackie Dircks is a Dakota County Child Support Officer. The record does not reveal the exact positions held by Brenda Stansbury, Deloris Daggett, and Philip Dalseth, though they all appear to be employees of Dakota County Community Services.

County Defendants liable for the alleged violations of his constitutional rights associated with the license suspension process.

The Dakota County Defendants raise a variety of arguments in their motion for dismissal, including immunity under the Eleventh Amendment. While there are a variety of bases for dismissing Higgins Complaint as against the Dakota County Defendants, the Court will address the viability of Higgins' constitutional claims head-on.

First, Higgins claims that the involvement of the Administrative Law Judge in his original license suspension hearing violated the separation of powers required by the Minnesota State Constitution. Indeed, the Minnesota courts have concluded that he is correct. In *Holmberg v. Holmberg*, 578 N.W.2d 817 (Minn. Ct. App. 1998), *aff'd*, 588 N.W.2d 720 (Minn. 1999), the Minnesota Court of Appeals ruled that the use of ALJs to adjudicate post-decree child support disputes violated the separation of powers required by the Minnesota Constitution by conferring judicial authority upon executive agents. However, citing pragmatic concerns, the Minnesota Court of Appeals specified that its decision was prospective only: it "does not affect the validity of existing support obligations." *Holmberg*, 578 N.W.2d at 824. Thus, the *Holmberg* decision offers no remedy to Higgins.

To the extent that Higgins suggests Minnesota courts erred in limiting the application of *Holmberg* and not applying the decision retroactively, the Court lacks jurisdiction to review the state courts' holding pursuant to the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is based on two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). "The essence of the *Rooker-Feldman* doctrine is that the lower federal courts do not have the authority to review the judgments of the state courts even when a federal question is presented." *Centres v. Town of*

*Brookfield, Wisconsin*, 148 F.3d 699, 1998 WL 315942,*2 (7th Cir. 1998). Any review of the Minnesota courts' decision must be made to the United States Supreme Court.

Similarly, under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to entertain Higgins' claims that the 1997 proceeding violated his procedural due process rights. Higgins' claims of procedural due process violations were rejected by the Minnesota Court of Appeals; this Court cannot review that decision.

Second, Higgins claims that the child support enforcement process in some way violated his rights to equal protection under the laws. However, the Complaint does not specify the basis for any discrimination; in other words, Higgins does not specify what class-membership forms the basis for any alleged discrimination. Simply put, the Complaint does not specify how Higgins was treated differently and in comparison to whom. As a result, the Court cannot engage in a more detailed equal protection analysis and must simply find that Higgins has failed to state an equal protection claim for which relief might be granted.

Next, Higgins has asserted that the attempt to suspend his driver's license and his professional license during a second enforcement procedure would place him in double jeopardy. To this end, he cites *U.S. v. Halper*, 490 U.S. 435 (1989), for the proposition that civil proceedings designed to impose "punishment" may implicate double jeopardy. *U.S. v. Halper* was abrogated by the Supreme Court in *Hudson v. U.S.*, 522 U.S. 93 (1997). In *Hudson*, the Supreme Court held that purely civil penalties do not implicate the double jeopardy clause. Under the *Hudson* analysis, it is clear that the child support enforcement mechanisms at issue in this case are purely civil penalties. *See Rivera v. Pugh*, 194 F.3d 1064, 1068 (9th Cir. 1999) (finding that civil license revocation does not implicate double jeopardy clause).

Higgins has also intimated that the process of child support enforcement somehow implicates the religion clauses of the First Amendment. However, the Complaint does not specify what religious precepts are placed in jeopardy by the state ordering and compelling Mr. Higgins to support his children. The Court lacks the imagination to discern some possible connection between the procedure challenged and the religion clauses. Without more, the Court must conclude that Higgins has failed to state a claim for violation of his First Amendment rights.

Higgins further invokes the right to travel and the right to access to the courts as bases for his constitutional claims. However, the facts alleged in the Complaint do not implicate either right. The right to travel "protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." *Saenz v. Roe*, 526 U.S. 489, 500 (1999). The suspension of a driver's license does not restrain an individual from traveling either within a state or between states, it merely denies an individual the privilege of traveling in a certain way. *Rivera*, 194 F.3d at 1068 ("license revocation does not involve an affirmative disability or restraint. An individual with a driver's license has been given a privilege by the state; license revocation is the loss of a privilege . . . .").

Similarly, Higgins has not asserted that he was affirmatively denied access to the courts. He has had an opportunity to file objections and to seek appellate review of every judicial and administrative decision made. Presumably, Higgins' claim of denial of court access is premised upon his expulsion from the ALJ proceedings in January of 1997. The right to access to the courts does not confer the right to behave in a disruptive manner or to be abusive to court

personnel. Higgins was granted access to the court, but refused to abide by court rules. His expulsion from the courtroom as a result does not, as a matter of law, rise to the level of a constitutional wrong.

Finally, Higgins has alleged that the child support enforcement measures at issue amount to either a bill of attainder and/or an *ex post facto* law, either of which would violate the constitution. These claims also fail on their face. First, the prohibition on *ex post facto* laws applies only to penal statutes. *See Kansas v. Hendricks*, 521 U.S. 346 (1997). As noted above, the child support enforcement provisions impose civil sanctions, not criminal punishments. Accordingly, Higgins' *ex post facto* claim is misplaced.

Higgins' claim that the child support enforcement provisions constitute a bill of attainder is similarly flawed. A bill of attainder is a legislative act which imposes a punishment on a named individual or a readily identifiable group of individuals without benefit of a trial. *See United States v. Brown*, 381 U.S. 437 (1965). The child support enforcement provisions do not target an individual or a group of individuals so as to constitute a bill of attainder. Presumably the "group" which Higgins alleges to be targeted are parents who have failed to comply with duly entered orders for child support. A generally applicable law which imposes some penalty upon people who engage in a particular behavior is not a bill of attainder, so long as a person can escape application of the punishment by changing his course of behavior *See Communist Party of U.S. v. Subversive Activities Control Board*, 367 U.S. 1 (1961) (law which defined subversive activities in such a way that, if the Communist Party ceased engaging in specific activities, the Communist Party could fall outside the parameters of the definition was not a bill of attainder). Here, Higgins and other parents in default on their child support obligations could avoid

application of these sanctions simply by paying their obligations. The enforcement provisions are not a bill of attainder.

Apart from his procedural due process claim (discussed above), Higgins does not appear to claim that the Dakota County Defendants acted in a manner inconsistent with the child support enforcement provisions then in effect. Rather, his challenge is to the constitutionality of those provisions. The constitutional challenges he raises, however, are utterly without merit. Accordingly, the claims against the Dakota County Defendants should be dismissed.

**7. State Defendants**

Higgins has also named a variety of state actors, including the ALJ's who presided over his hearings and the Governor of Minnesota, in his Complaint. Again, there are a variety of bases for granting the motion to dismiss of these State Defendants, but the Court need not reach the majority of them.

As with the Dakota County Defendants, Higgins' complaint against the State Defendants stems from their roles in enforcing allegedly unconstitutional legislative provisions. Because the Court has concluded that Higgins has failed to state a valid constitutional claim, the Complaint as against the State Defendants should be dismissed.

**8. Motions to Intervene**

James Charles Rose and Larry Allen Nelson, two men who are in arrears on child support payments and are also facing suspension of their driver's licenses, have moved to join Higgins as plaintiffs in this action. Because Higgins' Complaint should be dismissed in its entirety, there is no action for Mr. Rose and Mr. Nelson to join. Accordingly, their motion to intervene is denied.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Removal, Petition to Suspend State Action, Motion for Leave to Amend Complaint and to Enlarge Scope of Matter, Motion to Strike Certain Exhibits, Motion to Consolidate and Hold Separate Trial, Motion to Temporary Restraining Order, Motion for a Jury Trial and Motion for Summary Judgment (Doc. No. 25) is **DENIED**;

2. James Charles Rose's Motion to Intervene (Doc. No. 27) is **DENIED**;

3. Larry Allen Nelson's Motion to Intervene (Doc. No. 29) is **DENIED**;

4. Defendants Suzanne Born, Terry Pahl, George Beck, Laura Kadwell, State of Minnesota Child Support Enforcement Division, State of Minnesota Department of Human Services, Governor Jesse Ventura, Minnesota Attorney General Michael Hatch, Commissioner of Public Safety Charles Weaver, and Director of Driver and Vehicle Services Brian Lamb's Motion to Dismiss (Doc. No. 6) is **GRANTED**;

5. Defendants City of West St. Paul and Sergeant Shaver's Motions to Dismiss or, in the alternative, for Summary Judgment (Doc. Nos. 7 and 13) are **GRANTED**;

6. Defendants Assistant Dakota County Attorney James Crow, Dakota County Attorney James Backstrom, Dakota County Board of Commissioners, Dakota County Community Services, Brenda Stansbury, Deloris Daggett, Jackie Dircks, and Philip Dalseth's Motion to Dismiss (Doc. No. 10) is **GRANTED**;

7. Defendant Lana Higgins' Motion to Dismiss or, in the alternative, for Summary Judgment and for Sanctions (Doc. No. 11) is **GRANTED**;

8. Defendant Mark Carter's Motion to Dismiss or, in the alternative, for Summary Judgment and for Sanctions (Doc. No. 12) is **GRANTED**;

9. Defendants Richard Wright and Midwest Patrol's Motion to Dismiss or, in the alternative, for Summary Judgment (Doc. No. 15) is **GRANTED**;

10. Defendants B. Todd Jones and Attorney General Janet Reno's Motion to Dismiss (Doc. No. 20) is **GRANTED**;

11. Plaintiff's **COMPLAINT** is **DISMISSED WITH PREJUDICE**; and

12. Defendants Lana Higgins and Mark Carter are directed to submit an affidavit detailing claimed attorney's fees and costs for purposes of imposing sanctions upon Plaintiff pursuant to Rule 11 of the Federal Rules of Civil Procedure.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: July 25, 2000

DONOVAN W. FRANK
Judge of United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995